CITY OF MEXICO, The (UNITED STATES v.). See Case No. 14,797.

## Case No. 2,757.

### The CITY OF NEW BEDFORD.

[10 Ben. 17.] [1]

District Court, S. D. New York. June, 1878.

COLLISION ON THE SOUND—STEAMER AND SCHOONER—LOOKOUT.

1. A schooner bound east and a steamer bound west came in collision in Long Island Sound in the night. Both vessels had proper lights set. The schooner averred that she was heading east half north; that the steamer was seen ahead a little on her port bow; that the schooner was kept on her course, and the steamer changed her course to the southward across the schooner's bows, and thus caused the collision. The steamer averred that she was heading due west, and that the schooner was seen ahead a little on the steamer's starboard bow, and that the schooner changed her course to the southward and ran into the steamer. Held, that. on the evidence, the story averred on behalf of the schooner was correct, and that, she having kept her course, it was the duty of the steamer to have avoided her, and that the steamer, having failed to do this, was liable for the collision.

2. Although the schooner had no lookout except her master, who was on her quarter-deck, yet, as the steamer was seasonably seen and kept in view and the schooner was kept on her course, there was no fault in reference to the lookout, which either charged the schooner with the collision or relieved the steamer from her responsibility for it.

In admiralty.

R. D. Benedict, for libellants.
H. J. Scudder, for claimants.

CHOATE, District Judge. This is a libel by Driscoll Brothers and others, the owners of the schooner J. W. Scott, against the steamer City of New Bedford, for damages caused by a collision between said vessels

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

about one o'clock in the morning of the 24th of November, 1876, in Long Island Sound. The schooner was bound from New York for St. John, New Brunswick, with a general cargo of merchandise. The steamer was bound on her regular trip from New Bedford for New York. The collision took place about five miles northerly from Horton's Point light. The night was dark, but lights could be seen a long distance. The libel avers that the schooner was heading east half north; that the steamer was seen at a long distance nearly ahead, but a little on the schooner's port bow; that the steamer did not make any change in her course till within about one hundred and fifty feet of the schooner, when she suddenly changed her course, sheering suddenly to port,—directly across the bows of the schooner, too late to pass her, and striking her side against the bowsprit of the schooner; that, from the time when the steamer was first seen till the collision, the schooner headed on her course east half north, and the steamer was heading about west by south until she changed her course to cross the schooner's bows; that the collision was caused by the negligence of the steamer in not keeping a proper lookout, in not avoiding the schooner, as she might have done by sheering, or slowing and stopping, and in unnecessarily crossing the bows of the schooner.

The answer avers that the steamer's course was due west; that those in charge of her made a green light about one point on her starboard bow, and a few minutes afterwards a red light about one point on her port bow; that she kept her course due west for a few minutes longer, when the vessel on her starboard bow suddenly showed both her green and red lights, and appeared to be bearing directly down upon the steamer; that the steamer's wheel was immediately thrown hard to starboard, and she was slowed to half speed, and at once began to fall off, and when she had fallen off about a point the vessel on her port bow also kept off sufficiently to keep out of her way, and the vessel on her starboard bow (the J. W. Scott) ran into her, the bowsprit striking on the starboard side on the first stateroom and breaking off, and the schooner striking the steamer again about amidships; that the collision was caused wholly by the carelessness of the schooner in changing her course instead of keeping her course, and in not having a proper lookout and in not being properly manned and equipped. The wind is stated in the libel to have been northwest by west, and in the answer about north northwest.

The witnesses on the schooner—her master who was on the lookout, and the man at the wheel—testify, that they saw the bright light of the steamer about a mile or more away; that they kept on their course east half north; that when they first saw the steamer's light it bore a little on their port bow; that as she neared them it drew a little further open;

that they then saw the green light of the steamer, and soon after the steamer swung to the southward across their bows, but before she could get across their course the vessels came together.

The witnesses on the steamer testify that she was running due west, when she made the green light of the schooner about one point on her starboard bow, and soon after a red light on her port bow; that as the green light approached, the vessel bearing it suddenly showed both her lights, bearing then about two points on her starboard bow; that the wheel of the steamer was immediately thrown hard a-starboard, and she was slowed, and the schooner struck her as they came together, the courses of the vessels being nearly at a right angle.

It is obvious that the two accounts cannot be in any way reconciled. If the steamer kept on her course due west and made the green light of the schooner on her starboard bow, and while she was so keeping on her course the schooner showed her both lights, the schooner must have changed her course. On the other hand, if the schooner kept her course east half north, and made the steamer's green light on her port bow, the steamer must have been heading considerably more to the southward than she claims to have been. The schooner was bound to keep her course, and the decisive question in the case is whether she did so. Upon a careful examination of all the testimony, I am satisfied that the schooner's account of the collision is correct, and that given by the steamer's witnesses is a mistake.

The witnesses on both vessels agree that they came together at about a right angle. Now to bring them into this position at the instant of collision, if the steamer was, as she says, heading due west before she starboarded, and then fell off a point and a half, as she says, the schooner must have headed at the time of the collision six points to the southward of an east course. With the wind as it was, somewhere from west northwest, as the libellant's witnesses say, to northwest by north, as the steamer's witnesses say, and they agree that it was a fresh breeze, the wind would very probably have been on the schooner's starboard quarter before the vessels came together, and in that case she would have jibed over before she struck. It is testified by the schooner's witnesses, and not contradicted by the steamer's witnesses, that, after she struck, her head was hauled round by the collision to the southward, and she then jibed over.

But without relying too much on this circumstance, which depends, perhaps, upon greater exactness as to the direction of the wind and the course of the schooner than can be with certainty arrived at, it is difficult to understand why the schooner should have made a course so far to the south as it is necessary to put her on to find the steamer's account substantially true.

The claimants called two witnesses from the schooner Merwin, and rely upon their testimony as corroborating that of the steamer's witnesses. Their testimony, however, tends strongly to confirm the case of the schooner, that she was not before the collision heading at all to the southward. If they are not mistaken in the identity of the vessel that came into collision with the steamer, she passed the Merwin on the starboard side, being a faster sailer, and, having got by, she luffed across the Merwin's bows, and when she got a very short distance to windward of the Merwin, stood on her course about east until the collision, which took place, as they say, about a quarter of a mile from them on their port bow.

This evidence is relied on by the steamer as accounting for the steamer's first seeing the green light of the schooner, which she would show when luffing up across the bows of the Merwin, and then both her lights, when afterwards she changed her course. But the testimony does not bear out the theory of the case, which is essential to the corroboration of the account given by the steamer, which requires the schooner to have been standing at least on an east southeast course when the steamer starboarded, and still further to the southward when she struck. This testimony does not show that, when the schooner stood on her course to the eastward after crossing the bows of the Merwin, she was so near to the steamer as to make it improper for her to stand to the eastward, but rather the contrary; and although the Merwin had made the steamer's light before the other schooner passed her, the Scott may upon the testimony of the Merwin's witnesses have been three-quarters of a mile or more from the steamer when she headed east on her course again, and if she then made the steamer's light and kept on her course, this evidence is all consistent with that of the libellants' witnesses. And if, as the witnesses from the Merwin say, they kept the Scott in view till the collision, seeing her binnacle light, they could hardly have failed to observe it if she had headed southeast, thus crossing the bows of the Merwin again. Indeed, no conceivable motive is suggested for the schooner's taking a southeasterly course, especially just after luffing up to get further to windward. It is not shown that anything was in her way. She cannot have sheered to the south to avoid the steamer. Such a movement was not called for by the account which either party gives of the relative positions of the two vessels. Her proper course was easterly. The wind was fair. To head south of east would be going out of her proper course. On the other hand, although the proper course of the steamer was due west, yet she was bound to vary from that course as should be found necessary to avoid sailing vessels, of which her witnesses admit there were very many in that part of the Sound at that time. She was going through them at full speed, twelve miles an hour. That she should be off of her course for this reason is no ways improbable; and it is much more probable that the witnesses on her deck should be mistaken as to the precise course she was on when she made the two lights of the schooner, and that they should fail in remembering a departure more or less from that course to the southward for the purpose of avoiding some vessel, than that the schooner without any reason should have made a southeasterly course, and that the witnesses from her and from the Merwin should all be mistaken. There is really only one witness from the steamer who testifies that the vessel whose green light was seen on the starboard bow was the same vessel whose two lights were afterwards seen, and which ran into the steamer; and he was looking out for the lights of other vessels in sight. It is not very improbable, as claimed by the libellant's counsel, that it was not the same vessel. The lookout on the steamer having reported the green light on the starboard bow, paid no further attention to her till both lights appeared close by. But if the vessel was the same, and the green light of the schooner was seen as she luffed across the bows of the Merwin, the evidence is satisfactory that her movements were not properly attended to by the steamer; that she again stood east at a perfectly safe distance from the steamer, and that the steamer afterwards took a more southerly course across her bows, thus bringing on the collision. The steamer was in fault in not keeping a good lookout, and in not avoiding the schooner, as she was bound to do.

The counsel for the claimants insists that the schooner was at fault in having no lookout forward, the master having acted as lookout, and being stationed on the quarter-deck. If this management had led to the schooner's not observing the steamer, and from not observing her she had changed her course, and thus brought on the collision, the collision might be attributed to this cause; but as she saw the steamer seasonably and kept her in view, and kept on her course, as she was bound to do, it is impossible to attribute to the schooner any fault in respect to the lookout, which either charges her with the collision or relieves the steamer from the responsibility for it.

The claimants' counsel also insists that the schooner had an incompetent wheelsman, and attributes the erratic course which is charged upon the schooner to his wild steering; but the evidence shows that he had sufficient experience to hold the schooner to her course, and there is no ground in the testimony for this theory.

There must be a decree for the libellants, with a reference to compute the damages.